## A91A2104. MAJORS v. THE STATE.
### (416 SE2d 156)

ANDREWS, Judge.

Majors was indicted for armed robbery, aggravated assault and criminal interference with government property. He was tried by a jury, convicted and appeals.

Evidence adduced at trial was that at about 3:00 a.m. on April 23, 1990, police officer Barrett was riding morning watch alone when he observed an Oldsmobile sedan driving very slowly. As he approached the vehicle it picked up speed and began driving in excess of the speed limit. Barrett pulled the car over and it stopped at the right side of the road. Barrett stopped his cruiser behind and to the left of the Oldsmobile. The driver of the Oldsmobile, later identified as co-defendant Lane, got out of the car, walked back to Barrett and showed him his driver's license and a tag receipt for a car which had been reported stolen. Barrett then followed the driver to the front of the car and noticed that the steering column was broken in a manner consistent with the vehicle being stolen. Barrett took the driver back to the police vehicle, frisked him and placed him in the back seat.

Barrett then walked to the front of the police vehicle so that he could see the license tag number and as he did so Majors got out of the passenger seat, walked to the rear of the Oldsmobile, raised a gun to Barrett's face and stated: "I have something for you." Majors forced Barrett to drop to his knees and took Barrett's gun belt, which contained his gun, police radio and ammunition clips. The other passenger, who was not present for trial, released Lane from the police car and then Barrett's shirt and bulletproof vest were taken off as Majors continued to hold the gun to Barrett's head. Majors told Barrett to run, and as he did so, Majors opened fire, firing an estimated 16 rounds and riddling the police vehicle with bullets. Majors and the other men sped off in the car. In the report which was made of the incident, Barrett recalled that Majors was about six feet tall, was dark complected and was wearing a dark starter's jacket and a cap.

At 4:00 a.m. on the same date, the three men went to the home of a witness, and told him of this incident. At that time, the men had with them a police radio and police vest.

Later that day, Majors was arrested at a hotel. The officers entered the hotel room in which Majors was sleeping and observed a pistol under his pillow. Further investigation revealed that the pistol belonged to Barrett.

On May 14, 1990, Barrett identified Majors during a lineup. According to one of the police officers conducting the lineup, Majors selected the participants in the lineup and then Majors selected his number and, after all numbers were assigned, Barrett entered the room to view the participants.

Majors was sentenced to life for armed robbery, ten years to run consecutively for the aggravated assault and five years to run concurrently for interference with government property. Co-defendant Lane was acquitted.

1. In his first enumeration of error, Majors argues that the trial court abused its discretion by failing to grant his motion for severance.

"OCGA § 17-8-4 provides that when two or more defendants are jointly indicted for a felony less than capital defendants may be tried jointly or separately in the discretion of the trial court. Our Supreme Court has found that the trial judge must exercise his discretion in each particular case, but the burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process. They set forth a three-part standard: (1) Will the number of defendants create confusion of the evidence and law applicable to each individual defendant? (2) Is there a danger that evidence admissible against one defendant will be considered against another despite the admonitory precaution of the court? (3) Are the defenses of the defendants antagonistic to each other or to each other's rights? We answer each question in the negative. We find no error." (Punctuation and citations omitted.) Sims v. State, 186 Ga. App. 74 (4) (366 SE2d 406) (1988); see also Sims v. State, 195 Ga. App. 631 (394 SE2d 422) (1990); Martin v. State, 189 Ga. App. 483, 487-488 (3) (376 SE2d 888) (1988); Stephens v. State, 170 Ga. App. 267 (1) (316 SE2d 847) (1984); see Cain v. State, 235 Ga. 128 (218 SE2d 856) (1975). Majors has failed to articulate any specific reason for severance, he has failed to show any actual prejudice or denial of due process which resulted from the failure to sever, and we find no error in the trial court's denial of the motion to sever.

2. In his second enumeration of error, Majors argues that the aggravated assault conviction should be vacated since that crime merged into the conviction for armed robbery. Majors argues that the act of pointing the gun at Barrett was the basis for both the aggravated assault and the armed robbery charge and that the latter crime therefore merged with the prior.

This enumeration is without merit. The indictment itself charged that the armed robbery was committed when Majors and the two other men "did unlawfully, with the intent to commit theft, take from the person and immediate presence of T. D. Barrett, the following property . . . by intimidation and by use of a handgun, the same being an offensive weapon." With respect to aggravated assault, the indictment charged that the three men "did unlawfully commit an assault upon the person of T. D. Barrett, by pointing a firearm, a

deadly weapon, at him and discharging the firearm in his immediate presence, thereby placing him in reasonable apprehension of immediately receiving serious bodily injury."

"While it is settled that aggravated assault is not included in robbery, armed robbery or attempted armed robbery, as a matter of law, [cits.], it may be included as a matter of fact." *Hambrick v. State*, 256 Ga. 148, 150 (344 SE2d 639) (1986). Evidence here established that the armed robbery occurred when Majors held the machine gun to Barrett's head and took his property; "the shots subsequently fired by appellant at the victim constituted a separate offense." *Johnson v. State*, 190 Ga. App. 172, 173 (378 SE2d 700) (1989). Thus, the armed robbery was complete before the assault occurred and the crimes did not merge. See *Lambert v. State*, 157 Ga. App. 275 (277 SE2d 66) (1981).

3. In Majors' next enumeration of error, he contends that the trial court erred by refusing to excuse a biased juror for cause. The allegedly biased juror was a journalist who indicated that he had written a story regarding the incident, although he did not recall any details of it. In response to general inquiry, the reporter stated that he could be a fair and impartial juror. In later questioning by the court, the reporter stated that he "hoped" his slight knowledge of the matter would not affect his ability to be impartial. He agreed that he would be willing to listen to the evidence and determine the facts from the evidence presented. He also stated that he had not made a determination regarding the facts as a result of his story investigation and that despite the fact that he had spoken to the police regarding the incident he was not sure he believed their version of events. Defense counsel used a peremptory strike to remove him from the jury and did not exhaust the defense peremptory strikes in selecting the jury.

Pretermitting the question of whether the alleged error here was harmful, we find this enumeration without merit. "In order to disqualify a juror for cause, it must be established that the juror's opinion was so fixed and definite that it would not be changed by the evidence or the charge of the court upon the evidence. It was not established that [this prospective juror] had such a fixed opinion. This enumeration of error is without merit." (Citations and quotations omitted.) *Pope v. State*, 170 Ga. App. 799 (1) (318 SE2d 223) (1984); see also *Lee v. State*, 258 Ga. 762 (2) (374 SE2d 199) (1988); *Wynn v. State*, 168 Ga. App. 132 (308 SE2d 392) (1983); *Williams v. State*, 222 Ga. 208 (4) (149 SE2d 449) (1966).

4. Majors claims that the trial court abused its discretion by failing to allow additional jury strikes for the defense since the two defendants were being tried jointly. We do not agree.

OCGA § 17-8-4 provides: "[i]n the event two or more defendants

are tried jointly, the court, upon request of the defendants, acting in its sole discretion, may allow an equal number of additional strikes to the defendants, not to exceed five each, as the court shall deem necessary, to the ends that justice may prevail." "Nothing in the record indicates the denial of this motion was an abuse of the court's 'sole discretion.' " *Merrill v. State*, 130 Ga. App. 745, 750 (3) (b) (204 SE2d 632) (1974); see also *Ramsey v. State*, 165 Ga. App. 854, 855 (303 SE2d 32) (1983).

5. Majors argues that the trial court committed reversible error by denying appellant's motion to suppress the pretrial identification of him which he claims resulted from an impermissibly suggestive lineup. He claims that an officer loudly yelled the number which Majors was wearing, that Majors was the only participant wearing a starter jacket such as the one the perpetrator allegedly wore and that Majors was unrepresented by counsel at the lineup.

We find this enumeration without merit. "[I]n a motion to suppress, the judge is the trier of fact. Credibility and weight, and resolution of conflicts or inconsistencies are matters to be determined by the judge in a motion to suppress. In the absence of evidence of record demanding a finding contrary to the judge's determination, we will not reverse the ruling denying the suppression. The evidence was sufficient to show that this line-up was not impermissibly suggestive." (Punctuation and citations omitted.) *Woods v. State*, 165 Ga. App. 39, 40 (1) (299 SE2d 97) (1983).

There was testimony from Officer Barrett and from other witnesses that the lineup preparation was not audible nor visible to Barrett prior to Barrett's entry into the room. Similarly, we find nothing improper about Major's clothing. Furthermore, nothing in Major's vaguely articulated allegations regarding the absence of his attorney indicates that the lineup was improper in any sense. Although Barrett expressed slight hesitation initially regarding his identification, evidence was that he had ample time to observe Majors at the time of the incident and that his vehicle's headlights provided light for Barrett to see Majors.

"There is nothing in the transcript to indicate that the lineup was impermissibly suggestive, or that there was a likelihood of misidentification. As the in-court identification was shown to be independent of the lineup identification, it was not error to allow the in-court identification." (Citations omitted.) *House v. State*, 170 Ga. App. 88, 89 (316 SE2d 483) (1984).

6. In his sixth enumeration, Majors contends that the trial court erred by denying his motion to suppress the pistol found in the hotel room because the officers had an arrest warrant for Majors and not a search warrant for the room. This enumeration is without merit, since there was evidence that when the police officers entered the hotel

room, they saw the pistol butt protruding from under the pillow on which Majors was lying, clearly within arm's reach. See OCGA § 17-5-1; *Banks v. State*, 246 Ga. 178 (2) (269 SE2d 450) (1980).

7. Finally, Majors claims that the trial court erred in denying his motion for a mistrial based on the trial court's failure to strike his alias from the indictment, claiming that the alias served no useful purpose and operated to prejudice the accused. "Where the accused is known by different names . . . it is lawful for the indictment to identify the accused by all such names as alias dicta." (Punctuation and citations omitted.) *Hughes v. State*, 161 Ga. App. 824 (1) (288 SE2d 916) (1982).

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 2, 1992.

*Giddens, Davidson, Mitchell & Eaton, Earl A. Davidson*, for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Henry M. Newkirk, Rebecca A. Keel, Assistant District Attorneys*, for appellee.